IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

FRED WEST,

    Plaintiff

v.

APPALACHIAN ELECTRIC COOPERATIVE,

    Defendant.

Civil Action No._____

JURY TRIAL REQUESTED

## COMPLAINT

Plaintiff Fred West states his cause of action against Appalachian Electric Cooperative as follows:

## PARTIES

1. Fred West is an individual who resides in Jefferson County, Tennessee.

2. Defendant Appalachian Electric Cooperative ("AEC") is a non-profit corporation organized under the laws of the state of Tennessee, with its principal place of business in New Market, Tennessee. AEC's registered agent for service of process is Gregory D. Williams, 1109 Hill Drive, New Market, TN 37820.

## JURISDICTION AND VENUE

3. This Court has jurisdiction of Plaintiff's claims set forth in this action pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 626(c)(1), and 29 U.S.C. § 1132.

4. This Court has supplemental jurisdiction of the state law claims joined in this action pursuant to 28 U.S.C. § 1367(a).

5. Mr. West filed a Charge of Discrimination against AEC with the Equal Employment Opportunity Commission ("EEOC") on May 22, 2012.

6. On October 23, 2012, the EEOC mailed to Mr. West a Notice of Right to Sue. This Complaint is timely filed within ninety (90) days of Mr. West's receipt of the Notice of Right to Sue.

7. All jurisdictional prerequisites for the filing of this Complaint have been satisfied.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because all of the events or omissions giving rise to the Plaintiff's claims occurred in this district.

9. AEC is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

10. Fred West is a sixty-four (64) year old man.

11. AEC hired Mr. West as an electric meter reader on March 12, 1973.

12. AEC promoted Mr. West to a management position as Warehouse Manager in 1976.

13. From 1976 through July 2012, Mr. West was the Warehouse Manager for AEC.

14. As the Warehouse Manager, Mr. West had responsibility for all materials, equipment, and supplies stored and distributed for use by AEC in its electric utility business.

15. During the more than thirty-five (35) years that Mr. West was the Warehouse Manager, he usually had one or two employees under his direct supervision.

16. All of Mr. West's work performance evaluations stated that he met or exceeded expectations.

17. Mr. West received multiple raises based upon his performance.

18. In December 2010, one of Mr. West's subordinate employees, Wendy Humbard, filed a charge of discrimination against AEC with the Equal Employment Opportunity Commission.

19. Upon information and belief, Ms. Humbard alleged in her EEOC charge that Mr. West had discriminated against her based on her sex and had retaliated against her.

20. Upon information and belief, AEC denied Ms. Humbard's allegations of discrimination and retaliation relating to Mr. West.

21. Upon information and belief, in 2011, the EEOC determined that there was no probable cause to believe that discrimination or retaliation had occurred as alleged in Ms. Humbard's charge of discrimination.

22. Ms. Humbard did not file a civil action against AEC or Mr. West.

23. Ms. Humbard filed a criminal assault charge against Mr. West.

24. In 2011, Ms. Humbard's assault charge against Mr. West was dismissed without an indictment.

25. In 2011, Greg Williams became the General Manager of AEC.

26. In 2011, Mr. West's immediate supervisor was Dale Lawson, Vice-President of Administration.

27. In the spring of 2011, AEC hired Leslie Strader as Human Resources Manager.

28. Mr. West requested that AEC separate his work assignments and work area from the work assignments and work area of Ms. Humbard.

29. AEC refused to separate the work assignments and work areas of Mr. West and Ms. Humbard.

30. For a period of approximately three months in mid-2011, Ms. Strader and Mr. Lawson met with Mr. West on a bi-weekly basis at the warehouse.

31. In these five or six bi-weekly meetings, Mr. West, Mr. Lawson, and Ms. Strader discussed the status of Mr. West's interaction with Ms. Humbard.

32. In these five or six bi-weekly meetings, neither Mr. Lawson nor Ms. Strader expressed any dissatisfaction with or complaints about Mr. West's interaction with any of his subordinate employees.

33. In these five or six bi-weekly meetings, neither Mr. Lawson nor Ms. Strader requested that Mr. West make any changes in his behavior or his supervision of any of his subordinate employees.

34. In the fall of 2011, the bi-weekly meetings between Mr. West, Mr. Lawson, and Ms. Strader at the warehouse ceased. Neither Mr. Lawson nor Ms. Strader told Mr. West why they ceased to meet with him.

35. On February 3, 2012, Mr. West was asked to come to the office of AEC's General Manager, Greg Williams for a meeting.

36. Mr. West, Greg Williams, Dale Lawson and Leslie Strader attended the February 3, 2012 meeting.

37. At the February 3, 2012 meeting, Mr. Williams gave Mr. West a document entitled "Final Warning" and told Mr. West that he was suspended for one week without pay.

38. AEC prepared the February 3, 2012 written "final warning" document and decided to suspend Mr. West before even asking Mr. West about the conduct alleged to be the basis of the disciplinary action.

39. The reasons stated in the February 2012 "final warning" document for the disciplinary action against Mr. West are false.

40. AEC had not "counseled" Mr. West about "unacceptable conduct."

41. There were not "numerous occasions" in which Mr. West "raised [his] voice" or "used inappropriate language."

4

42. At the meeting on February 3, 2012, Mr. West asked Greg Williams, Dale Lawson, and Leslie Strader for specific examples of occasions when he "raised his voice" or "used inappropriate language." None of those managers provided Mr. West any specific examples of such behavior.

43. The written "final warning" stated that Mr. West "discussed confidential medical information with coworkers." The only incident even possibly related to this statement was Ms. Humbard's unrequested and unwelcome graphic description of her recent colonoscopy to Mr. West and a coworker, which was initiated solely by Ms. Humbard.

44. In the February 3, 2012 meeting, Mr. West pleaded with AEC General Manager Gregory Williams, Human Resources Manager Leslie Strader, and Vice President of Administration Dale Lawson to tell him, "What am I doing wrong?" None of them gave Mr. West an answer.

45. At the conclusion of the February 3, 2012 meeting, Mr. Williams asked Mr. West, "How old are you?"

46. Mr. West told Mr. Williams that he was sixty-four (64) years old. Mr. Williams asked whether Mr. West was considering retiring. Mr. West replied that he intended to keep working for several more years.

47. After the February 3, 2012 meeting, Mr. West was on unpaid suspension for one week.

48. During the unpaid suspension, Mr. West began experiencing nervous tics, elevated blood pressure, anxiety, and depression, and he began receiving medical treatment for these conditions.

49. Mr. West did not return to work at the end of the one-week suspension without pay. He was placed on medical leave by his physician.

50. On February 28, 2012, while Mr. West was on medical leave, Mr. Williams contacted Mr. West by telephone. During this February 28, 2012 telephone conversation, Mr. Williams

5

Case 3:13-cv-00002-TAV-CCS   Document 1   Filed 01/03/13   Page 5 of 11   PageID #: 5

again questioned Mr. West about retirement. Mr. Williams stated that he (Mr. Williams) knew that Mr. West had "quasi-ed," that is, quasi-retired by cashing out his original AEC retirement plan account in a lump sum distribution, and had begun participation in the newer AEC retirement plan.

51. Mr. West asked Mr. Williams, "Do I need to retire?" Mr. Williams told Mr. West that if he came back to work, he would be forced to work in the same position and environment with Ms. Humbard, and that "we can't be there to protect you."

52. AEC set upon a course of action to force Mr. West into resigning or retiring.

53. AEC used the unreliable and unsubstantiated allegations of a chronically disgruntled subordinate of Mr. West and/or asserted vague, undefined misstatements of alleged misconduct as a pretext for disciplining Mr. West.

54. AEC's real reasons for its actions against Mr. West were discrimination against Mr. West because of his age and AEC's desire to replace older employees with younger employees.

55. AEC deliberately rendered Mr. West's working conditions intolerable by forcing Mr. West to continue working with a chronically disgruntled employee, and either using her complaints or alleging that she had complaints as a basis for disciplining Mr. West without even discussing any alleged complaints with Mr. West.

56. AEC made clear to Mr. West that if he returned to work, AEC would ultimately fire him.

57. AEC used its wrongful disciplinary action against Mr. West, the intolerable working conditions, and the threat of termination for misconduct to force Mr. West to quit his job.

58. AEC constructively discharged Mr. West from employment.

59. Mr. West retired from AEC effective July 31, 2012.

60. Upon information and belief, AEC General Manager Greg Williams questioned other employees who were over age 60 about their intended date of retirement.

61. Upon information and belief, AEC has targeted other AEC employees over 62 years old who have "quasi- retired" for disciplinary action, and those employees have been or are being forced into retirement.

## COUNT I: AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 621 *et seq.*

62. Plaintiff Fred West incorporates the allegations of paragraphs 1 – 61 of the Complaint by reference.

63. AEC is vicariously liable for the actions of its managers and supervisors.

64. AEC and its managers discriminated against Plaintiff Fred West because of his age, as alleged in the preceding paragraphs.

65. The discrimination of AEC against Plaintiff Fred West because of his age resulted in tangible adverse employment action, including, but not limited to involuntary suspension without pay and constructive discharge.

66. The age discrimination and discriminatory practices and actions of AEC described in this Complaint were in violation of the Age Discrimination in Employment Act, 29 U.S.C.§ 621 *et seq.*, and were taken with malice or with reckless indifference to the federally protected rights of Plaintiff Fred West.

67. Plaintiff Fred West has suffered damages as a result of the age discrimination by AEC, including, but not limited to, loss of income and benefits, loss of future income and benefits, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

7

Case 3:13-cv-00002-TAV-CCS Document 1 Filed 01/03/13 Page 7 of 11 PageID #: 7

68. Plaintiff Fred West is entitled to recover from AEC both monetary damages and equitable relief, including, but not limited to, back pay, front pay, compensation for lost benefits, and injunctive relief.

69. In addition to compensatory damages, Plaintiff Fred West is entitled to recover punitive damages from AEC, and his attorney's fees and costs of litigation.

## COUNT II: FOR AGE DISCRIMINATION IN VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT

70. Plaintiff incorporates the allegations of paragraphs 1 – 69 of the Complaint by reference.

71. The age discrimination and discriminatory actions of AEC as described in this Complaint were in violation of the Tennessee Human Rights Act, T.C.A. § 4-21-101 *et seq*.

72. Plaintiff Fred West has suffered damages as a result of the age discrimination, by AEC, including, but not limited to loss of income and benefits, loss of future income and benefits, humiliation, embarrassment, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, and he is entitled to compensatory damages and equitable relief.

73. Plaintiff Fred West is entitled to recover from AEC both special and general damages, including, but not limited to, damages for emotional distress, reasonable attorney's fees and costs, and punitive damages.

# COUNT III: FOR VIOLATION OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT, 29 U.S.C. § 1001, *et seq.* ("ERISA")

74. Plaintiff incorporates the allegations of paragraphs 1 – 73 of the Complaint by reference.

75. In the alternative to his claims of age discrimination, Plaintiff Fred West alleges that AEC constructively discharged him, suspended him without pay, disciplined him, or otherwise discriminated against him for exercising rights to which he is entitled under the provisions of an employee benefit plan, in violation of 29 U.S.C.A. § 1140, the Employee Retirement Income Security Act ("ERISA").

76. Under the AEC employee retirement plan in which Fred West participated for most of his period of employment with AEC, an employee could take a lump sum distribution of his retirement account at age 62 or at 30 years of service, but could continue working for AEC. This procedure was called "quasi-retirement" by the employees and management of AEC.

77. Mr. West requested and received a lump sum distribution of his retirement account in April 2004, while he was still employed by AEC as Warehouse Manager.

78. After receiving the lump sum distribution from his retirement account, Mr. West continued working for AEC and enrolled in AEC's new retirement plan, which was a defined benefit plan. In addition, Mr. West simultaneously participated in a 401k plan with a 1% matching contribution by AEC.

79. Upon information and belief, Mr. West's participation in the AEC retirement plans after receiving a lump sum distribution from the older retirement plan, as well as the same actions by other long-term, older AEC employees, forced AEC to increase its spending in connection with its employee retirement plans.

80. Upon information and belief, AEC sought to force Plaintiff Fred West and other long-term, older AEC employees to resign or retire in order to prevent them from receiving the benefits of both the older retirement plan and the newer retirement plan.

81. Plaintiff Fred West is entitled to recovery of all retirement benefits of which he has been deprived, including all benefits he would have received if he had not been constructively discharged and his employment with AEC had continued.

82. AEC was a fiduciary of the retirement plans, and as a fiduciary, owed Plaintiff Fred West a fiduciary duty to perform its duties with the utmost loyalty to Plaintiff and solely in his best interest and that of the Plan participants for the exclusive purpose of providing benefits to Plaintiff and other Plan participants.

83. AEC breached its fiduciary duty by constructively discharging Fred West, suspending him without pay, disciplining him, and otherwise discriminating against him for exercising rights under the retirement plan and to prevent him from exercising his rights under the retirement plan.

84. Pursuant to 29 U.S.C. §1132, Plaintiff Fred West seeks an award of civil penalties against Defendant AEC, all appropriate equitable relief, and recovery of his attorney's fees and litigation expenses.

WHEREFORE, Plaintiff Fred West prays:

1. That process issue and be served upon Appalachian Electric Cooperative,

2. That a trial of this cause be had before a jury of twelve persons;

3. That on Count I of this Complaint, judgment be entered for Plaintiff Fred West and against Appalachian Electric Cooperative for an amount not less than $100,000.00, plus Plaintiff's reasonable attorneys fees and costs;

4. That on Count II of this Complaint, judgment be entered for Plaintiff Fred West and against Appalachian Electric Cooperative, for an amount not less than $100,000.00, plus Plaintiff's reasonable attorneys fees and costs;

5. That on Count III of this Complaint, judgment be entered for Plaintiff Fred West and against Appalachian Electric Cooperative, for an amount not less than $100,000.00, plus Plaintiff's reasonable attorneys fees and costs, and that AEC be required to pay civil penalties as required by law;

6. That all costs of this action be assessed against Defendant Appalachian Electric Cooperative; and

7. That the Court enter such other orders and grant such further relief as is just and proper.

Respectfully submitted,

*Adrienne L. Anderson*
Adrienne L. Anderson (BPR # 015971)
ANDERSON BUSBY PLLC
P. O. Box 2588
Knoxville, Tennessee 37901-2588
(865) 249-8011
AAnderson@AndersonBusby.com

*Counsel for Plaintiff Fred West*